# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #009

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of March, 2026** are as follows:

**BY Hughes, J.:**

2025-KK-00471     STATE OF LOUISIANA    VS.    CHRISTOPHER CLOUDIE (Parish of Orleans Criminal)

REVERSED. SEE OPINION.

Weimer, C.J., concurs and assigns reasons.
Hughes, J., additionally concurs and assigns reasons.
McCallum, J., dissents.
Cole, J., additionally concurs for the reasons assigned by Weimer, C.J.
Penzato, J., dissents and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2025-KK-471

## STATE OF LOUISIANA

## VS.

## CHRISTOPHER CLOUDIE

On Supervisory Writ to the Criminal District Court, Parish of Orleans Criminal

**HUGHES, J.***

In this case, the defendant seeks review of the trial court's ruling permitting an expert witness to give her diagnosis at trial of child sexual abuse. For the following reasons, we reverse.

### FACTS AND PROCEDURAL HISTORY

The defendant, Christopher Cloudie, was charged with one count of first-degree rape in violation of La. R.S. 14:42(A)(4) and one count of aggravated crime against nature in violation of La. R.S. 14:89.1(A)(2). The State of Louisiana accuses Mr. Cloudie of performing oral sex on his minor son while giving the child a bath on December 16, 2023. The child was eight years old at the time.

The child was taken to the emergency department of a hospital on the evening of the alleged abuse, and the medical exam revealed no physical findings. Approximately one month later on January 19, 2024, the complaining witness was seen at the Audrey Hepburn CARE Center in the New Orleans Children's Hospital by a psychiatric mental health nurse practitioner, Ongelle Bergeron, who diagnosed the child with "child sexual abuse."

The State filed a notice of intent to offer Ms. Bergeron as an expert at trial. At the *Daubert* hearing, Ms. Bergeron testified as to her education and professional experience as well as the procedure she follows for medical evaluations carried out

* Judge Allison H. Penzato of the Court of Appeal, First Circuit, appointed as Justice pro tempore, sitting for the vacancy in the First District.

at the CARE Center. Ms. Bergeron testified that her appointment with the child in this case was not a forensic exam but rather a "medical assessment." As to the procedure, Ms. Bergeron testified that a medical evaluation begins with speaking to the child and his or her caregiver to get a "past medical history," which includes any medical diagnosis, past surgeries, and medication. Then the interviewer speaks one-on-one with the child to obtain a "medical incident history." This includes building rapport with the child, a discussion about private parts, private part rules, and whether those rules were broken. After this, a physical examination is conducted, where a child's body is thoroughly examined to look for signs of injury. Based on these steps and possibly others (such as reviewing lab results, reports previously written by other healthcare providers, and consultation with other medical specialists), a diagnosis is formed.

Ms. Bergeron testified that in 80 to 85 percent of cases, there are no physical findings. She further testified that cases will be peer reviewed by her colleagues at the CARE Center if there are any abnormalities found, but in this case there were no abnormalities. Ms. Bergeron also testified that she takes what a child tells her as true. She continued: "I make sure that there aren't any ambiguities. I look for clear and concise details, also, if there is any abnormalities in lab work. So it's not just what the patient is saying. It's all of those factors." Ms. Bergeron said that she follows the diagnostic criteria in the book *Child Abuse and Neglect* by Crosson-Tower, 9th edition. She also testified that there are no standardized checklists for diagnostic criteria and that a diagnosis "all depends on your experience." Ms. Bergeron could not provide an error rate for the diagnosis of child sexual abuse for the method used in this case. She testified that occasionally a child's statement of sexual abuse would later be confirmed with a positive pregnancy or STI test.

Ms. Bergeron stated that when it came to a diagnosis she would typically consider "[w]hat was said by the patient" and "if there are any abnormal findings."

In a case with no physical findings, she stated she's "looking for a clear and concise disclosure from the medical incident history from the patient." According to Ms. Bergeron, a clear and concise disclosure is important because what "[w]e found in child abuse medicine is that the more clear and concise a child is, the more detail they're able to provide, that's the least likely they are coached." In this case, Ms. Bergeron said that the child gave her a "clear and concise" disclosure.[1] She found no physical abnormalities on the child, and she did not see signs of coaching.

At the conclusion of Ms. Bergeron's testimony, the trial court found her to be an expert in the field of pediatric child abuse medicine and stated that Ms. Bergeron would be allowed to testify to the diagnosis she made as a result of her visit with the child. The defendant sought review with the court of appeal. The court of appeal denied his writ, citing *State v. D.D.*, 18-891, p. 65 (La. App. 4 Cir. 12/27/19), 288 So.3d 808, 854, which it said stood for the proposition that a nurse practitioner's diagnosis of chronic sexual abuse was admissible because it "'did not take the place of the jury in determining the ultimate fact of Defendant's guilt or innocence.'"[2] Justice Lobrano dissented from the writ denial on the basis that Ms. Bergeron should not be allowed to present a medical diagnosis of child sexual abuse without evidence of peer review by a board-certified child abuse pediatrician.

## LAW AND ANALYSIS

The defendant challenges Ms. Bergeron's diagnosis of child sexual abuse. He argues that Ms. Bergeron's diagnosis was improperly admitted because it was based on insufficiently reliable methodology and because it goes to the ultimate issue of his guilt, which is a judgment to be made by the jury. The State argues that Ms. Bergeron's diagnosis is admissible under the standards set forth in

---

[1] Ms. Bergeron provided no details of what she considered "clear and concise."

[2] In *D.D.* the issue was whether the expert testimony went to the ultimate question of defendant's guilt or innocence (in contravention of Louisiana Code of Evidence article 704) not whether the expert testimony bolsters the credibility of the complaining witness.

3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*[3] or *Kumho Tire Co., Ltd. v. Carmichael*[4] and that the diagnosis does not speak on the ultimate issue of the defendant's guilt.

In reviewing rulings on the relevancy and admissibility of evidence, the trial court is accorded great discretion and, absent a clear abuse of that discretion, such rulings will not be disturbed. *State v. Wesley*, 22-1312 (La. 8/27/22), 344 So.3d 647 (per curiam).

Louisiana Code of Evidence article 702(A) provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(2) The testimony is based on sufficient facts or data;
(3) The testimony is the product of reliable principles and methods; and
(4) The expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Based on the testimony at the *Daubert* hearing, we determine that the State has not met its burden of proof in demonstrating that Ms. Bergeron's diagnosis "will help the trier of fact to understand the evidence or to determine the fact in issue" nor that it is "based on sufficient facts or data."

Ms. Bergeron testified that her diagnoses of child sex abuse are based on any abnormalities that might be present plus the statement given by the child. She testified that she takes what the child says to her in the "medical incident history" to be true. While Ms. Bergeron testified she evaluates the child's statement based on whether the language used was "clear and concise," Ms. Bergeron did not provide a basis or methodology for how that evaluation is made, nor did she provide any

---

[3] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[4] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

specifics of what was "clear and concise" in the child's statement. Her diagnosis will not help the trier of fact to understand the only evidence presented at trial (the child's statement), nor is it based on sufficient facts or data because the diagnosis is solely based on the child's account of the incident, which the jury will hear at trial from the child himself.

The methodologies described by Ms. Bergeron also run afoul of the reliability requirements in Article 702. When evaluating the reliability of expert evidence, pertinent factors for a court to consider include: (1) the "testability" of the scientific theory or technique, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the methodology is generally accepted in the scientific community. *Daubert*, 509 U.S. at 594; *see also State v. Quatrevingt*, 93-1644 (La. 2/28/96), 670 So.2d 197, 204. Ms. Bergeron testified that she utilized criteria for her diagnosis as published in the textbook *Child Abuse and Neglect* by Crosson-Tower. However, she also testified that there is no known error rate for the methodology she followed and that there are only a limited number of instances when a diagnosis of child sexual abuse can be confirmed by physical evidence (such as an STI or pregnancy test).

Expert witness testimony has an important but limited place in criminal jury trials and specifically child sexual abuse trials. As this court in *State v. Chauvin* explained:

> Expert testimony can assist a trier of fact in understanding the significance of a child-witness's demeanor, inconsistent reports, delayed disclosure, reluctance to testify, and recantation. An expert witness can explain to jurors that a child-witness's seemingly abnormal behavior—delayed reporting, inconsistent statements, and recantation—is in fact normal for children who have been sexually abused and can also dispel inaccurate perceptions held by jurors, allowing them to better assess a child-witness's testimony. Expert testimony becomes problematic when it infringes upon other interests: for example, when it is unduly prejudicial, when it invades the province of the jury, when it **bolsters a child-witness's testimony**, or when it leads to a 'battle of the experts.'

5

02-1188 (La. 5/20/03), 846 So.2d 697, 702-03 (citations omitted) (emphasis added).

In *Chauvin*, this court held that an expert witness' testimony regarding the PTSD diagnosis of the child complainant in a sexual abuse case was inadmissible because it exceeded the purposes for which expert testimony could be introduced. *Id.* at 709. In *Chauvin*, the State sought to use the expert testimony of a licensed clinical social worker to establish that the child's clinical symptoms were "consistent with a sexual abuse victim; in other words, to use her testimony as substantive evidence of sexual abuse." *Id.* at 699. Citing *State v. Foret, infra*, the court in *Chauvin* reasoned that expert testimony of general characteristics that would explain delays in reporting, recantations, and omissions of details would be admissible; however, those situations were not present in that case. *Id.* at 708. This court concluded:

> We find [the] expert testimony went beyond the limited purpose of explaining the superficially bizarre behavior of a victim of child sexual abuse. We further find [that the] testimony deprived defendant of a fair trial by **imbuing the [victims'] testimony with an undeserved scientific aura of truth**. This testimony impermissibly bolstered the testimony of both [victims]. There was absolutely no indication that this testimony was necessary to explain to the jury the significance of a child-witness's demeanor, inconsistent reports, reluctance to testify or recantation.

> *Id.* (Emphasis added.)

The *Chauvin* and *Foret* cases were both concerned about an expert witness bolstering the testimony of the complaining witness. In *Foret*, which adopted the United States Supreme Court's standards for determining reliability of expert scientific testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a child psychologist qualified as an expert testified that the victim was telling the truth due to the detailed accounts she gave of the incident and conversations with the defendant, her feelings of disgust and sadness, her report that the defendant was possessive of her and told her to keep the incident a secret, and

6

that the victim felt she had done something wrong. *State v. Foret*, 628 So.2d 1116, 1119 (La. 1993). The psychologist, Dr. Janzen, further explained:

> And then on the basis of what I get from the child, the type of detail that I get from the child to make some conclusions about whether or not what she is telling me suggests that she has been sexually abused, or another way of putting it, on the basis of what I get from the child I make some conclusions about whether or not what she is telling me is consistent with what we know about the dynamics of sexual abuse.

*Id.*

This court wrote that based "largely on the testimony of the victim, as bolstered by Dr. Janzen, the jury returned a verdict of guilty of attempted molestation." *Id.* at 1120.

In reversing the conviction, the *Foret* court reasoned that this type of expert testimony should focus on explaining seemingly unusual or inconsistent reactions (such as delayed reporting) of the complaining witness to the jury. *Id.* at 1130. Such testimony on psychological dynamics and behavior patterns is of assistance to the jury because the child's behavior is not within the common experience of the average juror. *Id.* The *Foret* court emphasized that such opinion testimony should be general in nature without giving testimony directly on the complaining witness' credibility. *Id.* With the expert's scientific perspective, the jurors can evaluate the child's testimony for themselves. *Id.* In reviewing cases from other jurisdictions, the *Foret* court concluded:

> The rationales for excluding the evidence all seem to focus on the factfinding role of juries and that [ ] this role involves a determination as to the credibility of each witness. Testimony by an expert is not particularly helpful to a jury that must rely upon its own common sense as a barometer for the evaluation of truthfulness. The cases all seem to focus on, in the face of such expert testimony, fears of 'the jury surrender[ing] its own common sense in weighing [victim] testimony and deferr[ing] to [a] diagnosis [of sexual abuse] without knowing that the diagnosis was nothing more than a subjective opinion favoring [the victim].'

7

*Id.* at 1127 (quoting *United States v. Whitted*, 994 F.2d 444, 447 (8th Cir. 1993) (rehearing granted on other grounds).[5]

Furthermore, the introduction of the diagnosis in the instant case would also be admitted in contravention of Louisiana Code of Evidence article 403. As *Foret* ruled, "[t]his bolstering of credibility has the effect of unfairly prejudicing a criminal defendant," and, thus the use of such medical expert testimony "for the purpose of bolstering a witness' credibility creates a risk of prejudice that outweighs its questionable probative value." *Id.* at 1129.

## CONCLUSION

In conclusion, the trial court erred in ruling that Ms. Bergeron was allowed to testify to the diagnosis of child sexual abuse because, under the facts of this case, such an opinion is prohibited by Louisiana Code of Evidence article 702(A) and would improperly bolster the complaining witness' testimony.

## DECREE

Accordingly, for the reasons stated, we reverse the ruling of the trial court.

**REVERSED.**

---

[5] On rehearing the Eighth Circuit in *United States v. Whitted* wrote:

> Dr. Likness could not base his diagnosis solely on L.'s allegations of abuse. *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (doctor's opinion based solely on patient's oral history is nothing more than patient's testimony 'dressed up and sanctified'); *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988) (expert opinion lacking objective factual support cannot help jury and thus is inadmissible under Rule 702).

*United States v. Whitted*, 11 F.3d 782, 786 (8th Cir. 1993) (on rehearing).

# SUPREME COURT OF LOUISIANA

### No. 2025-KK-00471

### STATE OF LOUISIANA

### VERSUS

### CHRISTOPHER CLOUDIE

*On Supervisory Writ to the Criminal District Court,*
*Parish of Orleans–Criminal*

**WEIMER, C.J.**, concurring.

Child abuse cases are always a tragedy. Often these matters involve diametrically conflicting testimony of the accuser and the accused. Abuse mostly occurs in private with the accused and the alleged victim having some relationship. Physical evidence is rare. Many children delay reporting abuse and often do not include details; they may recant or alter their testimony because of threats, fear, or confusion. Against this backdrop, judges and juries must assess the admissibility of expert testimony that assists–but does not supplant–the jury in its fact-finding role regarding credibility.

The testimony of the proposed expert, Ms. Bergeron, demonstrates that she has sufficient expertise and experience to testify in certain cases, but that does not show that she has the requisite knowledge to testify in this specific case, on this record. Most problematic is Ms. Bergeron's testimony that, in her evaluation, she accepts what the child tells her as true. An expert's testimony that she believes the child is particularly troubling in cases involving abuse to juveniles where one party testifies against another, and the expert's testimony would merely "prop up" the testimony of the alleged victim. This court addressed a similar predicament in **State v. Foret**, 628 So.2d 1116, 1130-31 (La. 1993), holding that an expert's testimony, giving his

opinion that a victim was telling the truth, was an impermissible comment on the victim's credibility, making that testimony inadmissible. The court reasoned that an expert giving a "stamp" of truthfulness on a victim's/witness's testimony has the effect of bolstering credibility and artificially increasing its probative strength with the jury, thereby prejudicing the defendant. *Id.* at 1129. Instead, the evidence should be admissible for the limited purpose of explaining, in general terms, certain reactions of a child to abuse (late reporting, recanting statements) that would be used to attack the victim's credibility. *Id.* at 1131. Such expert evidence must be restricted to providing a scientific context to the jury on matters outside its experience that the jury can use to assess credibility on its own. *Id.* at 1130.

Thus, while Ms. Bergeron has ample educational qualifications and skill in evaluating child abuse medically, I find testimony offered at the pretrial hearing that she believes the child is in conflict with **Foret**. The jury's role is to evaluate the credibility of the alleged victim and the accused if the accused chooses to testify.

The majority cites **State v. Chauvin**, 02-1188 (La. 5/20/03), 846 So.2d 697, which relied on **Foret**, citing broad principles that expert testimony must not improperly bolster the complaining witness's testimony by imbuing it with an expert's endorsement of truthfulness or invade the province of the jury to determine the credibility of witnesses. I dissented in **Chauvin** related to the discrete issue of admissibility of evidence related to Post Traumatic Stress Disorder (PTSD). Although I dissented in **Chauvin**, that case involved a PTSD diagnosis, which this case does not involve. The victims-witnesses were also older–teenagers–not young children. Further, unlike this matter, **Chauvin** did not invoke an expert's assessment of a victim-witness's credibility. My dissent in **Chauvin** is distinguishable from this case.

2

For these reasons, I respectfully concur.

**SUPREME COURT OF LOUISIANA**

**No. 2025-KK-00471**

**STATE OF LOUISIANA**

**VS.**

**CHRISTOPHER CLOUDIE**

On Supervisory Writ to the Criminal District Court, Parish of Orleans Criminal

**Hughes, J., additionally concurring.**

Respectfully, the dissent's reference to a "sweeping ruling" and the adoption of a "bright-line rule" is misguided. This court does not have the power to change the provisions of Louisiana Code of Evidence articles 403 and 702(A) and the Opinion is clearly limited "under the facts of this case."

# SUPREME COURT OF LOUISIANA

## No. 2025-KK-00471

## STATE OF LOUISIANA

## VS.

## CHRISTOPHER CLOUDIE

On Supervisory Writ to the Criminal District Court, Parish of Orleans Criminal

**PENZATO, Justice Pro Tempore**, dissenting.

I respectfully dissent from the majority's conclusion that a properly qualified medical expert cannot testify to a diagnosis based on patient history.

Healthcare providers routinely rely on patient history to diagnose conditions that do not necessarily manifest in physical findings. In those instances, the patient history is a vital source of information needed to make the diagnosis. This is not a novel or otherwise unreliable method of reaching a medical opinion. This Court has long recognized that reliance on patient history is widely accepted in the medical community and often the only basis for making a diagnosis:

> Physicians rely upon a patient's history, his candor in relating that history, observations of reactions to false tests as well as accurate tests, observations of normal activity and demeanor during examination and treatment, and many non-clinical factors. Laymen are certainly able to relate their own observations of the activity and demeanor of one claiming injury and pain.

> In many cases, including the one we consider, much of the medical evaluation must be based upon subjective symptoms. All diagnoses cannot be objectively supported. Physicians recognize that medical diagnoses, although not clinically established, may be correct. In most countries of the world, and in the medical treatment of the greatest portion of the world's population, physicians seldom resort to laboratory analyses for diagnoses and treatment of illness.

*Tantillo v. Liberty Mutual Ins. Co.*, 315 So. 2d 743, 747 (La. 1975).

The threshold reliability requirement of Louisiana Code of Evidence article 702 is satisfied when, as here, an expert's opinion is based on their extensive experience in a scientific field and is the product of a methodology generally accepted in that field. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592; 113 S.Ct. 2786, 2796; 125 L.Ed.2d 469 (1993) ("Widespread acceptance can be an important factor in ruling particular evidence admissible.").

The majority's reliance on *State v. Foret*, 628 So. 2d 1116 (La.1993) and *State v. Chauvin*, 02-1188 (La. 5/20/03), 846 So. 2d 697 is misplaced. In both cases, an expert diagnosed other psychological conditions that, according to the expert, were caused by the abuse and thus substantiated the victim's testimony. The *Foret* and *Chauvin* courts excluded the opinions because the causal link between the abuse and the other conditions was not supported by sufficient scientific evidence.

In *Foret*, the expert used a "psychological phenomenon" known as child sexual abuse accommodation syndrome to opine that the victim's sexual abuse accusation was truthful. The syndrome itself was diagnosed based on the victim's behavior and emotional state. But the use of the syndrome as a tool to diagnose sexual abuse "is seen as having highly dubious value by many members of the psychological treatment community" and "fails to satisfy the . . . general acceptance" element of *Daubert*. *See Foret*, 628 So. 2d at 1125. This Court further found "the results of psychoanalysis are rife with the potential for inaccuracy," and "studies . . . suggest that evidence based on psychodynamic formulations are unreliable . . . [which] contributes to the inefficient, misleading, and prejudicial nature of this testimony." *Foret*, 628 So. 2d at 1125-26 (internal quotation marks omitted). The syndrome-related evidence was "of highly questionable scientific validity, and fails to unequivocally pass the *Daubert* threshold test of scientific reliability." *Foret*, 628 So. 2d at 1127.

2

Even assuming the evidence met the *Daubert* standard, the *Foret* court alternatively found the expert could not rely on the syndrome findings to opine the victim was telling the truth. The court explained:

> [T]he use of [the syndrome]-based testimony for the purpose of bolstering a witness' credibility creates a risk of prejudice that outweighs its questionable probative value. Given the near unanimity of other jurisdictions' disapproval of [the syndrome]-based testimony as a determinant of abuse, coupled with our observations of the risk of prejudice inherent in [the syndrome], this court now concludes that such opinion testimony as a determinant of a victim/witness' credibility is not admissible.

*Foret*, 628 So. 2d at 1129.

In *Chauvin*, a social worker testified that the victim's post-traumatic stress disorder (PTSD) was consistent with sexual abuse. *Chauvin*, 846 So. 2d at 700. Finding the trial court erred in allowing the testimony, this Court emphasized the lack of scientific evidence establishing a link between sex abuse and PTSD:

> Although PTSD is widely accepted among professionals as an anxiety disorder attributable to some type of trauma, it has not been proven to be a reliable indicator that sexual abuse is the trauma underlying the disorder or that sexual abuse has even occurred.

*Chauvin*, 846 So. 2d at 707.

As indicated, the experts in *Foret* and *Chauvin* diagnosed the victim with a psychological condition and, in an effort to bolster the victim's credibility, testified the psychological condition was consistent with sex abuse. The experts used the secondary condition as purported proof the victim was telling the truth. The problem with that approach, as this Court made clear, was the lack of scientific evidence establishing a causal link between the psychological conditions and sex abuse. Absent that link, the experts were simply "imbuing the girls' testimony with an *undeserved* scientific aura of truth . . . [that] *impermissibly* bolstered the testimony of both girls." *Chauvin*, 846 So. 2d at 708 (emphasis added).

Ms. Bergeron did nothing of the sort. She is a highly qualified healthcare provider who diagnosed a patient with child sexual abuse. She confirmed her

methodology for conducting the examination, obtaining the patient history, and making the diagnosis consistent with her training, education, and experience. She did not diagnose a second condition and attempt to "impermissibly bolster" the victim's credibility by maintaining, without support, that the second condition is caused by sexual abuse. Ms. Bergeron likewise did not vouch for the victim's credibility. Like any competent healthcare provider, she accepted the patient history as true absent anything indicating otherwise. Again, this is a widely accepted practice in the medical field. Any inconsistencies in the patient history, which might undermine Ms. Bergeron's opinion, can be fully developed on cross-examination.

The majority adopts a bright-line rule that excludes a diagnosis of sexual abuse not supported by physical findings. The unfortunate reality is that "physical evidence of the abuse is rare." *Chauvin*, 846 So. 2d at 702. Today's holding effectively eliminates critical testimony by treating healthcare providers in 80 to 85 percent of all abuse cases. Article 702 does not require this blanket exclusion, particularly in a pre-trial ruling without the benefit of the actual testimony presented to the jury.

The majority's sweeping ruling is counter to the deference granted to trial courts to act as gatekeepers for expert testimony. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152; 119 S.Ct. 1167, 1176; 143 L.Ed.2d 238 (1999). The trial court is thus afforded broad discretion in determining whether expert testimony is admissible, and its decision will not be overturned absent an abuse of that discretion. *Melerine v. Tom's Marine & Salvage, LLC*, 20-00571 (La. 3/24/21), 315 So. 3d 806, 818.

4

I find no abuse of discretion in this case and would affirm the trial court's ruling permitting the state's expert to testify to her diagnosis. For these reasons, I respectfully dissent.