STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2023 KA 0221

STATE OF LOUISIANA

VERSUS

JAMES BISHOP

JUDGMENT RENDERED: **OCT 18 2023**

* * * * * * *

Appealed from The Twenty-Second Judicial District Court
Parish of St. Tammany • State of Louisiana
Docket Number 611,058 • Division G

The Honorable Scott Gardner, Presiding Judge

* * * * * * *

Bertha Moseley Hillman                          COUNSEL FOR APPELLANT
*Louisiana Appellate Project*                   DEFENDANT—James Bishop
Covington, Louisiana


Warren L. Montgomery                            COUNSEL FOR APPELLEE
*District Attorney*                             State of Louisiana
Matthew Caplan
J. Bryant Clark, Jr.
*Assistant District Attorneys*
Covington, Louisiana

* * * * * * *

**BEFORE: WELCH, HOLDRIDGE, AND WOLFE, JJ.**

Holdr. JcJ., concurs of reasons

**WELCH, J.**

The State of Louisiana charged the defendant, James Bishop, by grand jury indictment with first degree rape of a victim under the age of thirteen years (T.Z.[1]) (count I), a violation of La. R.S. 14:42(A)(4); molestation of a juvenile (T.Z.) (count II), a violation of La. R.S. 14:81.2(A)(1), (B)(2) and (C); production of pornography involving juveniles (count III), a violation of La. R.S. 14:81.1(A)(1) and (E)(4) (prior to amendment by 2018 La. Acts, No. 682, § 1); aggravated rape[2] of a victim under the age of thirteen years (T.P.) (count IV), a violation of La. R.S. 14:42(A)(4); molestation of a juvenile (T.P.) (count V), a violation of La. R.S. 14:81.2(A)(1), (B)(2) and (C); and pornography involving juveniles (count VI), a violation of La. R.S. 14:81.1(A)(1)(2) and (E)(1). (R. 62-63). The State severed Count III prior to trial.

Following a jury trial, the jury found the defendant guilty as charged on counts I, II, IV, V, and VI by unanimous verdicts.[3] On count I, the trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On count II, the trial court sentenced the defendant to a concurrent term of twenty years at hard labor, five years without benefit of parole, probation, or suspension of sentence. On count III, the trial court sentenced the defendant to a concurrent term of twenty years at hard labor without benefit of probation, parole, or suspension of sentence. On count IV, he was sentenced to a

---

[1] We reference the victims and their family members by their initials. See La. R.S. 46:1844(W).

[2] 2015 La. Acts, No. 184, §1 and 2015 La. Acts, No. 256, §1 renamed the offense of aggravated rape as first-degree rape.

[3] When the counts were listed for the jury at the beginning of trial, count III was omitted, count IV was listed as count III, count V was listed as count IV, and count VI was listed as count V. The responsive verdict form provided to the jury listed the responsive verdicts for counts I and III (as renumbered) together, counts II and IV (as renumbered) together, and count V (as renumbered) separately. The verdict form listed the counts in the same order as the responsive verdict form, but numbered them from I to V, rather than I, III (as renumbered), II, IV (as renumbered) and count V (as renumbered). The jury found the defendant guilty on all counts. Accordingly, the renumbering of the counts did not affect substantial rights of the defendant. See La. C.Cr.P. art. 921.

2

concurrent term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On count V, he was sentenced to a concurrent term of twenty years at hard labor, five years without benefit of parole, probation, or suspension of sentence. The defendant now appeals, contending reversible error occurred when the testimony of a State expert invaded the province of the jury. For the following reasons, we affirm the convictions and sentences on counts I, II, IV and V; we vacate the sentence on count III, and remand with instructions.

## FACTS

M.N. lived with the defendant in Slidell for approximately twenty years. (R. 670). She had two children and four grandchildren, including granddaughters T.P., and T.Z. While M.N. was living with the defendant, he helped to take care of T.P. and T.Z. and was left alone with them.

T.P. testified that when she was eight years old, the defendant became sexually inappropriate with her by putting his mouth on her vagina. Thereafter, the defendant performed oral sex on her too many times to count. When T.P. was nine or ten years old, at the defendant's request, she performed oral sex on him, and he touched her private area and breasts. When T.P. was twelve years old, the defendant started touching her when she was going to sleep and asked to see and touch her vagina. When T.P. was thirteen years old, the defendant also began asking her to touch his penis with her hands.

T.P. and T.Z. both described one incident where the defendant victimized the two of them at the same time by telling T.Z. to touch T.P.'s vagina. T.Z. complied with the demand after T.P. told her to "do it, just get it over with." T.Z. did not disclose the abuse until she was fifteen years old because she did not think anyone would believe her.

When T.P. was fourteen or fifteen years old, the defendant would ask her to send him pictures of her vagina, breasts, and entire body.[4] He would also ask her personal questions about her relationships with boys and girls and then use what she told him to blackmail her into complying with his demands. When T.P. was fifteen or sixteen years old, the defendant bought her an LG phone. Thereafter, he called the phone and talked to T.P. while he masturbated. T.P. identified a photograph of her breasts that she took with the phone and sent to the defendant at his request when she was fifteen years old.

T.Z. testified when she was seven years old, the defendant became sexually inappropriate with her by showing her his penis, by touching her vagina, and by making her touch his penis with her hands. When T.Z. was twelve years old, the defendant touched her vagina with his mouth. When T.Z. was between thirteen and fifteen years old, the defendant would contact her using FaceTime and tell her to show him her breasts and vagina. The defendant took screen shots of this and threatened to post them on Facebook if she did not comply with his demands. T.Z. identified text messages between herself and the defendant stating, "[T.Z.], you leave me no choice. I'm going to Facebook[.]" She testified the conversation was about the defendant threatening to post the screen shots. When T.Z. was fifteen years old, she disclosed the defendant was abusing her, by writing a note stating, "I kept this secret for years. Grandpa is a rapist." T.Z. testified when she referenced "Grandpa," she was referring to the defendant.

## IMPROPER EXPERT TESTIMONY

In his sole assignment of error, the defendant contends the expert testimony of Anne Troy,[5] in which she diagnosed T.Z. with chronic child sexual abuse, invaded the province of the jury, resulting in reversible error.

---

[4] T.P. testified she used her own phone to send these messages.

[5] This witness referenced herself as "Dr. Troy" and testified that she was a nurse practitioner and had been a nurse for forty-four years.

4

Louisiana Code of Evidence article 704 provides:

Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.

As a general matter, if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[,]" a qualified expert may testify in the form of an opinion. La. C.E. art. 702(A)(1). However, "expert testimony, while not limited to matters of science, art or skill, cannot invade the field of common knowledge, experience and education of men." **State v. Young**, 2009-1177 (La. 4/5/10), 35 So.3d 1042, 1046-47, cert. denied, 562 U.S. 1044, 131 S.Ct. 597, 178 L.Ed.2d 434 (2010); **State v. Stucke**, 419 So.2d 939, 945 (La. 1982). Under La. C.E. art. 704, a trial judge may admit expert testimony which "embraces an ultimate issue to be decided by the trier of fact[,]" but the expert witness is not permitted to testify to the ultimate issue of a defendant's guilt. **State v. Irish**, 2000-2086 (La. 1/15/02), 807 So.2d 208, 212, cert. denied, 537 U.S. 846, 123 S.Ct. 185, 154 L.Ed.2d 73 (2002).

In **State v. Foret**, 628 So.2d 1116 (La. 1993), the court recognized that scientific testimony could be admissible for very "limited purposes," and a proper presentation of the testimony would focus on explaining to a jury why superficially bizarre reactions such as delayed reporting take place. Furthermore, the opinion testimony should demonstrate or explain in general terms the behavioral characteristics of child abuse victims in disclosing alleged incidents, without giving testimony that directly concerns the particular victim's credibility. **Foret**, 628 So.2d at 1129-30.

**State v. Chauvin**, 2002-1188 (La. 5/20/03), 846 So.2d 697 involved an appeal of a conviction for indecent behavior with juveniles. **Chauvin**, 846 So.2d at 698. At trial, over the objection of the defense, the State presented expert testimony from a licensed clinical social worker who testified she had seen one of the victims as a patient

5

at a facility providing counseling for victims of sexual assault and domestic violence. **Chauvin**, 846 So.2d at 699. The social worker diagnosed the victim as suffering from Post-Traumatic Stress Disorder (PTSD). *Id.* At trial, the State asked the social worker whether the clinical findings, both subjective and objective, that she observed in regard to the victim, were those consistent with a child who had been sexually abused. **Chauvin**, 846 So.2d at 700. The social worker replied, "Yes, the symptoms were that of post-traumatic stress." *Id.*

The Supreme Court held that the testimony of the social worker violated the rules of **Daubert**[6] and **Foret**, concluding:

> Under these circumstances, we find that the State introduced the expert testimony regarding [the victim's] diagnosis of PTSD for the purpose of substantively proving that sexual abuse occurred. There is no indication that the State attempted to limit this evidence to explain delayed reporting, which could be construed as apparently inconsistent with having been sexually abused. There is no showing that PTSD evidence is reliable and accurate as substantive proof of sexual abuse and therefore, it is inadmissible for this purpose. We hold that this evidence, like CSAAS-based evidence, should be admissible only for the limited purpose of explaining, in general terms, certain reactions of a child to abuse that would be used to attack the victim/witness's credibility. **Foret**, 628 So.2d at 1131. The trial court in its discretion can determine, on a case by case basis, if a particularized hearing is necessary (**Daubert** hearing) to test the reliability of expert testimony on PTSD when it is being offered for the limited purposes discussed above.

**Chauvin**, 846 So.2d at 708-09.

On previous occasions, this Court has considered similar testimony from expert witnesses, including the expert witness involved in this case. **State v. Griffin**, 2015-1765 (La. App. 1st Cir. 4/27/16), 2016 WL 2840309, *1 (unpublished), involved a conviction for aggravated rape. At trial over defense objection, Nurse Troy agreed with the State that her observations of the victim's demeanor, as well as the physical findings, were consistent with sexual abuse. **Griffin**, 2016 WL 2840309 at *4. On appeal, this Court distinguished the testimonies of Dr. Janzen in **Foret** and the social

---

[6] **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

worker in **Chauvin**, noting Nurse Troy had not relied upon a collateral diagnosis, such as CSAAS or PTSD, to reach a finding of sexual abuse. **Griffin**, 2016 WL 2840309 at *6. We also noted Nurse Troy had not definitively stated that the victim had been sexually abused, whereas in **Foret**, 628 So.2d at 1120, Dr. Janzen had testified that the victim's details were "consistent with the dynamics of sexual abuse," and his "only conclusion" was that she "had been sexually abused." **Griffin**, 2016 WL 2840309 at *6. We found that while Nurse Troy had agreed with the State that the victim's demeanor, as well as the physical findings, were "consistent with a child who has been abused," on cross-examination, she had admitted she could not make a definitive finding of sexual abuse. *Id.* Accordingly, we concluded that Nurse Troy's testimony was within the limits of **Daubert**, **Foret**, and **Chauvin**. *Id.*

**State v. Grandison**, 2018-0046 (La. App. 1st Cir. 11/5/18), 2018 WL 5785333, *1 (unpublished), writ denied, 2018-1992 (La. 6/3/19), 272 So.3d 545, involved a conviction for aggravated rape, and the defendant's challenge to the admission of testimony from expert witness Dr. Jackson that her diagnosis of child sexual abuse was solely based on the child's history provided by the victim. **Grandison**, 2018 WL 5785333 at *6-9. On appeal, we found the issue barred from review. See La. C.Cr.P. art. 841; **Grandison**, 2018 WL 5785333 at *7. Moreover, we noted, as in **Griffin**, Dr. Jackson had not affirmatively stated that the victim had been sexually abused or that she was being truthful. **Grandison**, 2018 WL 5785333 at *9. Indeed, when asked if she knew whether the victim had "absolutely told [Dr. Jackson] the truth," Dr. Jackson answered, "No one can speak to the veracity of someone's statement. I'm not a lie detector. No one would be able to say." *Id.* We found Dr. Jackson's testimony "was certainly not 'tantamount to an opinion that the defendant was guilty of the crime charged[,]'" and thus, concluded it was within the limits of **Daubert**, **Foret**, and **Chauvin**. *Id.*, quoting **State v. Wheeler**, 416 So.2d 78, 81 (La. 1982).

7

**State v. Schwaner**, 2018-1012 (La. App. 1st Cir. 2/28/19), 2019 WL 990223, *1 (unpublished), involved convictions for sexual battery of M.L. At trial, the defendant objected to the following testimony from Nurse Troy:

Q. What did you learn from [M.L.] during this incident history?

A. She told me that Greg, her adopted father/uncle had sexually abused her by putting his penis in her mouth, that it was wet, clothes were off. He had just his shorts on when he was in the room. I always ask kids what is the saddest thing for you about this because sometimes kids look very flat when they are giving a history and she said the saddest thing was talking about it. She had to tell her aunt because she found out.
***
Q. Okay. I want to turn to the assessment page, what is the purpose of the assessment page?

A. In medicine, we get a subjective history from patients, we get physical findings then we compare those and we make differential diagnoses, ruled in or out and then make a final diagnosis. So, this would be the place where we would document that, the history provided to me, what the physical exam showed, what lab was pending and then my diagnosis.

Q. What was your assessment in this case?

A. You're asking my medical diagnosis.

Q. Yes, ma'am.

A. That it was a sexual abuse, chronic.

**Schwaner**, 2019 WL 990223 at *9.

On appeal, this court found Nurse Troy's testimony that she diagnosed the victim with "sexual abuse, chronic" to be an expression of an opinion as to the defendant's guilt or innocence, which should not have been allowed into evidence. **Schwaner**, 2019 WL 990223 at *10.

**State v. Mullen**, 2018-0643 (La. App. 1st Cir. 12/21/18), 269 So.3d 772, 775, writ denied, 2020-00408 (La. 10/6/20), 302 So.3d 529, involved convictions for aggravated rape and molestation of a juvenile (A.S.). At trial, the defendant moved for a mistrial in response to the following testimony from Nurse Troy:

Prosecutor: Well, you examined [A.S.], correct, on October 19, 2016?

Troy: Yes, I did.

Prosecutor: And what was [sic] your findings?

Troy: And, again, she has a history that's clear—what we're looking for if you're looking is she's got a clear and detailed history that she provided to me. It did not have any of those red flags that had me concerned for her, either having a psychiatric illness or having been coached, so, therefore, that was consistent with her being normal in her physical findings. So most child sexual abuse is diagnosed based on the history presented to us. So I made the diagnosis of child sexual abuse and did all the lab work involved in that.

**State v. Mullen**, 269 So.3d at 785.

On appeal, this court found Nurse Troy's testimony that she "made the diagnosis of child sexual abuse" to be "an unequivocal statement regarding [the victim's] credibility by conclusively diagnosing her as having been a victim of child sex abuse, be it solely a medical diagnosis or otherwise." **Mullen**, 269 So.3d at 785-86.

In the instant case, Dr. Anne Troy was accepted as an expert in the field of child abuse and child abuse pediatrics. She stated her medical diagnosis and treatment was driven by the history provided by the children she examined. She noted that history was often delayed because sexually abused children are more likely than not abused by someone they know, which results in them delaying reporting the abuse.

Dr. Troy obtained a history from and examined T.Z. The State asked Dr. Troy what was her diagnosis after the examination. Dr. Troy replied, "[c]hild sexual abuse, chronic." The defense objected, and the trial court overruled the objection.

The State continued questioning Dr. Troy as follows:

[State]: Is [T.Z.'s] disclosure consistent with child sexual abuse?

[Dr. Troy]: [T.Z.] provided me a clear and a detailed, spontaneous narrative that was consistent with child sexual abuse.

Thereafter, Dr. Troy identified a recording of the medical history provided by T.Z., which was played for the jury. The State asked Dr. Troy, "you had stated earlier that, after your assessment of [T.Z.], you found that she provided a clear and detailed history of ongoing sexual abuse, is that fair?" Dr. Troy, replied, "[t]hat is correct."

The defense engaged in the following colloquy with Dr. Troy:

9

[Defense]: So how many times have you testified, have said that the prosecutor says, you know this child has got up before you and said that they were abused and your opinion is, well, I think that child's lying, they weren't abused?

[Dr. Troy]: Well, I would never say that a child is lying because, again, I'm not a human lie detector. So what I'm looking for is whether or not I have a history provided to me that's clear and detailed in the sense of a narrative. And having received that, I will put, as will anyone who's trained in child maltreatment, that this is, from a medical point of view, is consistent with child sexual abuse. I don't investigate.

Thereafter, the defendant filed a written motion for a mistrial, arguing Dr. Troy's testimony that her medical diagnosis was chronic child sexual abuse was reversible error under **Foret, Chauvin, Schwaner**, and **Mullen**. At the hearing on the motion, the State pointed out Dr. Troy had not stated that T.Z. was telling the truth or that the defendant was guilty of the charges and had explained her challenged statement indicated T.Z. provided a clear and detailed history of sexual abuse.

The trial court noted, after reviewing the cited authorities and observing Dr. Troy and the context in which the challenged statement was given, found that the statement was not a prejudicial remark requiring a mistrial under La. C.Cr.P. art. 770, but at most a remark requiring an admonition under La. C.Cr.P. art. 771.[7]

The trial court admonished the jury:

Members of the jury, during the testimony of Dr. Anne Troy, a question was posed, and I paraphrase, what was your diagnosis involving [T.Z.]? The answer in a short form, and I paraphrase, is child sexual abuse comma chronic. The jury will disregard that testimony.

---

[7] Louisiana Code of Criminal Procedure article 770 provides that a defendant may move for a mistrial when the judge, district attorney, or a court official makes a remark or comment within the hearing of the jury, during the trial or in argument, which directly or indirectly refers to: (1) race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury; (2) another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; (3) the defendant's failure to testify in his own defense; or (4) the judge's refusal to direct a verdict. Louisiana Code of Criminal Procedure article 771 allows the State or the defendant to request that the court promptly admonish the jury to disregard irrelevant or prejudicial remarks made by the judge, district attorney, or a court official when the remarks are not within the scope of La. C.Cr.P. art. 770, or made by a person other than the judge, district attorney, or court official, regardless of whether or not the remark is within the scope of La. C.Cr.P. art. 770. The court may grant a mistrial on the defendant's motion if it is satisfied that an admonition is insufficient to assure the defendant a fair trial. La. C.Cr.P. art. 771. A mistrial under La. C.Cr.P. art. 771 is at the trial court's discretion and should be granted only where the prejudicial remarks make it impossible for the defendant to obtain a fair trial. **State v. Walston**, 2022-0317 (La. App. 1st Cir. 11/4/22), 2022 WL 16707997, *7.

The trial court also charged the jury as follows:

> An expert witness may state an opinion concerning matters that relate to their field of expertise, and may also state their reasons for the opinion. You are not bound to accept such expert testimony and you may give it great weight or slight [weight] or you may reject such testimony entirely, if, in your judgment, the reasons for it are not sound. (R. 945-46).

Under **Schwaner** and **Mullen**, Nurse Troy's diagnosis of "[c]hild sexual abuse, chronic" fell within the scope of Article 771, and thus, the granting of a mistrial was in the broad discretion of the trial court. See **State v. Caminita**, 2016-0121 (La. App. 1st Cir. 9/16/16), 203 So.3d 1100, 1106, writ denied, 2016-2045 (La. 9/6/17), 244 So.3d 988. Louisiana Code of Criminal Procedure article 775 provides in part that "[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by [La. C.Cr.P. art.] 770 or 771." As a general matter, mistrial is a drastic remedy that should only be declared upon a clear showing of prejudice by the defendant; a mere possibility of prejudice is not sufficient. In addition, a district court judge has broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial. A reviewing court should not reverse a defendant's conviction and sentence unless the error has affected the substantial rights of the accused. See La. C.Cr.P. art. 921; *Id.*

In both **Schwaner** and **Mullen**, this Court found the error to be subject to harmless error analysis. See **Schwaner**, 2019 WL 990223 at *11; **Mullen**, 269 So.3d at 786. The proper analysis for determining harmless error "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." **Sullivan v. Louisiana**, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); **Schwaner**, 2019 WL 990223 at *11; **Mullen**, 269 So.3d at 786.

Even in a capital case, the Louisiana Supreme Court has found the testimony of expert witnesses that the defendant was the perpetrator harmless where the testimony was cumulative and corroborative of other admissible evidence, and the jury was instructed that they alone were to determine the ultimate issues. See **State v. Code**, 627 So.2d 1373, 1384-85 (La. 1993), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994) ("Considering the admissible evidence concerning the palm prints, no rational juror could find those facts without also finding the ultimate fact of the defendant's guilt. It is beyond doubt the guilty verdict in this case was unattributable to the erroneous testimony."). See also, **State v. Batiste**, 99-1481 (La. App. 1ˢᵗ Cir. 3/31/00), 764 So.2d 1038, 1040, writ denied, 2000-1648 (La. 6/22/01), 794 So.2d 778 ("[A]ny error was harmless beyond a reasonable doubt. The values contained in this exhibit were merely cumulative and corroborative of the previously admitted testimony[.]"); **State v. Hawkins**, 633 So.2d 301, 307 (La. App. 1ˢᵗ Cir. 1993), ("[H]ad there been error in allowing the testimony, which we need not decide, the error would have been harmless. An observation by Ms. Logan that the victim had the demeanor of a child who had been sexually victimized is merely cumulative of other evidence in the record that the victim was indeed molested by the defendant."); **State v. Moser**, 588 So.2d 1243, 1249 (La. App. 1ˢᵗ Cir. 1991), writ denied, 594 So.2d 1314 (La. 1992) ("[T]he prosecutor's remark was cumulative and, as such, amounts to harmless error.").

In the instant case, Dr. Troy's diagnosis of "[c]hild sexual abuse, chronic" was cumulative and corroborative of other admissible evidence, specifically: the photograph of T.P.'s breasts and her testimony that, when she was fifteen years old, she used the phone the defendant bought her to photograph her breasts and to send the photograph to the defendant at his request; the evidence of the text messages between the defendant and T.Z. and her testimony that the defendant victimized her using FaceTime; and the testimony of both T.P. and T.Z. that the defendant ordered T.Z. to

12

touch T.P.'s vagina. No rational juror could find these facts without also finding the ultimate fact of the defendant's guilt. See **Code**, 627 So.2d at 1385. Additionally, the jury was admonished to disregard the challenged testimony of Dr. Troy and was charged that it need not accept expert testimony and was free to entirely reject such testimony. Accordingly, the challenged testimony of Dr. Troy was harmless in this case, and the trial court did not abuse its broad discretion in finding the testimony insufficiently prejudicial to deprive the defendant of a fair trial and that an admonition was sufficient to cure the prejudice from the testimony.

For these reasons, this assignment of error is without merit.

## SENTENCING ERROR

Under La. C.Cr.P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record, we have found sentencing errors in this matter. See **State v. Price**, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 123 (*en banc*), writ denied, 2007-0130 (La. 2/22/08), 976 So.2d 1277.

On count III, the trial court imposed a sentence of twenty years at hard labor without benefit of probation, parole, or suspension of sentence. Thereafter, the clerk advised the trial court that count III was severed. The trial court stated the counts were renumbered, and count IV was renumbered as count III. The trial court also stated that if the minute clerk had any issues with the numbering of the counts correlating to the sentences, the court would review the issues in the uniform commitment order.[8] The trial court did not vacate the sentence imposed for count III. Further, the sentence imposed for count IV—life without the benefit of probation, parole, or suspension of sentence (the mandatory sentence for count IV) was illegal for count III. See La. R.S. 14:42(D)(1) and La. R.S. 14:81.1(E)(4) (prior to amendment by 2018 La. Acts, No. 682, § 1). Accordingly, the record indicates the trial court imposed an invalid sentence

---

[8] The record does not contain a uniform commitment order.

13

for count III.[9]  A valid sentence must rest upon a valid and sufficient: (1) statute; (2) indictment; and (3) verdict, judgment, or plea of guilty.  La. C.Cr.P. art. 872.  The sentence imposed on count III does not rest upon a valid and sufficient verdict, judgment, or plea of guilty.  Accordingly, the sentence imposed on count III hereby is vacated.

The sentencing transcript further reflects the trial court failed to impose a sentence on count VI.[10]  A sentencing error occurs when a district court, in sentencing for multiple counts, does not impose a separate sentence for each count.  **State v. Mayo**, 2012-0707 (La. App. 1st Cir. 6/7/13), 2013 WL 2490361, *1 (unpublished); **State v. Soco**, 94-1099 (La. App. 1st Cir. 6/23/95), 657 So.2d 603.

It is well settled that a defendant can appeal from a final judgment of conviction only where a sentence has been imposed.  See La. C.Cr.P. art. 912(C)(1); **Mayo**, 2013 WL 2490361 at *1.  In the absence of a valid sentence on count VI, the defendant's appeal of that count is not properly before this court.  **Mayo**, 2013 WL 2490361 at *1.  Therefore, we do not consider the defendant's assignment of error in regard to count VI, as it is not properly before us.  Accordingly, the matter is remanded for sentencing on count VI.  After sentencing on count VI, the defendant may perfect a new appeal on that count.

## DECREE

**CONVICTIONS AND SENTENCES ON COUNTS I, II, IV & V AFFIRMED; SENTENCE ON COUNT III VACATED; REMANDED WITH INSTRUCTIONS.**

---

[9]  The sentencing minutes do not reflect a sentence for count III.  When there is a discrepancy between the minutes and the transcript, the transcript must prevail.  **State v. Lynch**, 441 So.2d 732, 734 (La. 1983).

[10]  The sentencing minutes reflect a sentence for count VI.  However, the transcript must prevail.  **Lynch**, 441 So.2d at 734.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT


DOCKET NUMBER


2023 KA 0221


STATE OF LOUISIANA


VERSUS


JAMES BISHOP



**HOLDRIDGE, J., concurring.**

I respectfully concur with the report. Under the facts of this case, I agree with the majority that the defendant was proven guilty of the crimes-charged beyond a reasonable doubt. However, I am troubled about the error of the trial court in allowing the testimony of Dr. Anne Troy, wherein she made the diagnosis of "child sexual abuse, chronic." A written motion for a mistrial was filed by the defendant, but the trial court deemed the statement not to be so prejudicial of a remark as to require a mistrial under La. C.Cr.P. art. 771. Clearly, the remark made by Dr. Anne Troy could not be any more prejudicial. The error of the trial court is compounded by the jurisprudence that such a profound error is subject to the harmless error analysis. See State v. Schwaner, 2018-1012 (La. App. 1 Cir. 2/28/19), 2019 WL 990223, at *11 (unpublished); State v. Mullen, 2018-0643 (La. App. 1 Cir. 12/21/18), 269 So.3d 772, 786, writ denied, 2020-00408 (La. 10/6/20), 302 So.3d 529.